**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivy Frankel, | No. CV-16-03101-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Aramark Services Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant Aramark Services, Inc.'s ("Defendant") Motion for Summary Judgment (Doc. 67). The Court now rules on the motion.

**I.   BACKGROUND**

On February 16, 2018, Defendant filed the pending Motion for Summary Judgment (Doc. 67). Plaintiff filed a timely Response on February 26, 2018 (Doc. 69). Defendant then filed a Reply on March 12, 2018 (Doc. 73).

Plaintiff brings a premises liability claim against Defendant in her First Amended Complaint (Doc. 1–2).

**A.   Facts**

Plaintiff brought this action against Defendant and other unknown entities. (Doc. 1–2 at 2). The following facts are either undisputed or recounted in the light most favorable to the non-moving party.

On January 5, 2015, Plaintiff was in an office cafeteria located at 1820 East Sky Harbor Circle South, Phoenix, AZ 85034. (Defendant's Statement of Facts ("DSOF"),

Doc. 68 ¶ 2; Plaintiff's Statement of Facts ("PSOF"), Doc. 72 ¶ 2). Aramark operates the cafeteria pursuant to a food services agreement, but does not own the property. (DSOF ¶ 3; PSOF ¶ 3). Plaintiff allegedly slipped on an unidentified "clear liquid substance" and fell on the cafeteria floor near a self-service soft drink dispenser. (DSOF ¶ 4; PSOF ¶ 4; Doc. 72–1 at 4). Plaintiff was injured as a result of the fall, hitting her head and arm on a nearby counter, (Doc. 72–1 at 3). She incurred medical care and treatment expenses as a result. (Doc. 1–2 at 5). There is no evidence regarding how the liquid got onto the floor or how long it was on the floor before the incident. (Doc. 68–4 at 1–2). It is unknown who or what caused the condition. (*Id.* at 3). Discovery closed on January 26, 2018. (Doc. 42).

Having set forth the pertinent factual and procedural background, the Court turns to Defendant's Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

In a diversity case, a federal court applies state substantive law, but federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The federal summary judgment standard is procedural, therefore it controls in a diversity case in federal court. *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) ("In diversity cases, procedural issues related to summary judgment are controlled by federal law.").

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. In the summary judgment context, however, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citations omitted).

### III. PREMISES LIABILITY CLAIM

In her Complaint, Plaintiff alleges that Defendant acted negligently by causing

and/or failing to remedy a dangerous condition which led Plaintiff to slip, fall, and become injured. (Doc. 1–2 at 4–5). In its Motion for Summary Judgment, Defendant argues that Plaintiff cannot prove that: (1) Defendant had notice of the condition that caused her fall, or (2) Defendant acted unreasonably under the circumstances. (Doc. 67 at 1). Defendant argues that Plaintiff therefore cannot establish a prima facie case for premises liability, making summary judgment appropriate in favor of Defendant. (*Id.* at 3).

### A. Legal Standard

Because this is a diversity case arising from alleged negligence occurring in Arizona, the Court must apply Arizona substantive law. *See Beesley v. Union Pac. R.R. Co.*, 430 F. Supp. 2d 968, 970 (D. Ariz. 2006) (citing *Erie R.R. Co.*, 304 U.S. at 78–79 (1938)). Under Arizona law, "the owner of a business is not an insurer of the safety of a business invitee, but only owes a duty to exercise reasonable care to his invitees." *Walker v. Montgomery Ward & Co.*, 511 P.2d 699, 702 (Ariz. Ct. App. 1973). "[A] proprietor who is not directly responsible for a dangerous condition is not liable simply because an accident occurred on his property." *Chiara v. Fry's Food Stores of Arizona, Inc.*, 733 P.2d 283, 284 (Ariz. 1987).

#### 1. Negligence

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). "In the absence of any one of these elements, no cause of action for negligence will lie." *Vivian Arnold Realty Co. v. McCormick*, 506 P.2d 1074, 1079 (Ariz. Ct. App. 1973). In other words, if Plaintiff fails to establish any one of the aforementioned elements, then the claim fails. Here, the Court will focus its inquiry on the element of breach.[1]

---

[1] Plaintiff is a business invitee under Arizona law. *See Nicoletti v. Westcor, Inc.*, 639 P.2d 330, 333 (Ariz. 1982) (defining business invitee as "a person who is invited to

"With respect to slip-and-fall cases, the mere occurrence of a fall on the business premises is insufficient to prove negligence on the part of the proprietor." *Preuss*, 635 P.2d at 1211. The Plaintiff has the burden of establishing negligence in opposition to Defendant's Motion for Summary Judgment. *See Nicoletti*, 639 P.2d at 332.

### 2. Slip-and-fall

#### a. Notice

In slip–and-fall cases, the plaintiff must first prove that the defendant had notice of the dangerous condition. *See Chiara*, 733 P.2d at 285.

##### i. Actual or Constructive Notice

To find notice in a slip-and-fall case, Arizona courts traditionally require a plaintiff to prove:

> 1) that the foreign substance or dangerous condition is the result of defendant's acts or the acts of his servants, or 2) that defendant had actual knowledge or notice of the existence of the foreign substance or dangerous condition, or 3) that the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it ([i].e., constructive notice).

*Walker*, 511 P.2d at 702. Under this traditional view, slip-and-fall plaintiffs had to prove "notice of the specific dangerous condition itself and not merely [that] the proprietor [had] general notice of conditions producing the dangerous condition." *Chiara*, 733 P.2d at 285.

##### ii. Mode-of-Operation Rule

In addition to traditional actual and constructive notice requirements, Arizona courts allow slip-and-fall plaintiffs to prove notice using the "mode-of-operation" rule. *See id.* The mode-of-operation rule allows plaintiffs, in certain circumstances, to bypass

---

enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."). It is undisputed that Plaintiff was in Defendant's business at the time of the incident. (DSOF ¶ 3; PSOF ¶ 3). In Arizona, "the proprietor of a business is under an affirmative duty to make the premises reasonably safe for use by invitees." *Preuss v. Sambo's of Ariz., Inc.*, 635 P.2d 1210, 1211 (Ariz. 1981). Accordingly, the Defendant owed a duty of reasonable care to Plaintiff. Defendant does not dispute the element of duty. The parties instead focus the entirety of their arguments on the element of breach, so the Court will do likewise in its analysis. (*See* Doc. 67 at 4–5; Doc. 72 at 1–7).

the traditional notice requirements by "look[ing] to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident." *Id.* The mode-of-operation rule "relieves the plaintiff of the initial burden of proving notice in cases where the occurrence of a transitory hazardous condition can reasonably be anticipated from the store owner's method of doing business." *Bloom v. Fry's Food Stores, Inc.*, 636 P.2d 1229, 1231 (Ariz. Ct. App. 1981). "The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference." *Chiara*, 733 P.2d at 285–86. The mode-of-operation rule therefore only applies "when a business can reasonably anticipate that hazardous conditions will regularly arise." *Id.* at 286.[2]

### b. Reasonable Care

If a slip-and-fall plaintiff succeeds in proving notice—either by establishing traditional actual or constructive notice, or via the mode-of-operation rule—the Court's inquiry moves to reasonable care under the circumstances. *See id.* Arizona law dictates that in a slip-and-fall case, the plaintiff "bears the burden of persuading the jury that the defendant acted unreasonably," and "[t]he plaintiff must . . . come forward with evidence supporting [her] case." *Id.*

## B. Analysis

### 1. Notice

#### a. Actual or Constructive Notice

Plaintiff can only prove actual or constructive notice by showing that Defendant had "notice of the specific dangerous condition itself and not merely . . . general notice of conditions producing the dangerous condition." *Chiara*, 733 P.2d at 285. In the present case, Plaintiff does not assert how the specific condition was created or how long it existed before the incident. (Doc. 68–4 at 1–2). Plaintiff also fails to provide any evidence that Defendant had any notice of the existence of the unidentified liquid on the

---

[2] In the context of the mode-of-operation rule, Arizona courts define "regularly" as "customary, usual, or normal." *Contreras v. Walgreens Drug Store*, 149 P.3d 761, 763 (Ariz. Ct. App. 2006).

cafeteria floor. (DSOF ¶ 8; PSOF ¶ 8). Rather, Plaintiff admits in her Response that she "has no direct evidence that Defendant had actual, or even constructive notice of the liquid on the floor prior to Plaintiff's slip and fall." (Doc. 69 at 4). Accordingly, Plaintiff cannot prove actual or constructive notice.

### b. Mode-of-Operation Rule

Next, the Court must decide whether Defendant, based on its mode of operation, "can *reasonably* anticipate that hazardous conditions will regularly arise." *Chiara*, 733 P.2d at 286 (emphasis added).

Arizona courts have previously applied the mode-of-operation rule to business with similar operations to Defendant. *See, e.g.*, *Tom v. S. S. Kresge Co., Inc.*, 633 P.2d 439, 441 (Ariz. Ct. App. 1981) (applying the mode-of-operation rule when a self-service market patron slipped and fell on an unidentified clear liquid of uncertain origin; concluding that the proprietor's selling of soft drinks that patrons could carry while shopping was a mode of operation sufficiently hazardous to waive traditional notice requirements); *see also Bloom*, 636 P.2d at 1231 (applying the mode-of-operation rule to preclude summary judgment when a grocery store patron slipped on a grape near an open food display based, in part, on the store's self-service mode of operation). In other jurisdictions, some courts also waived the notice requirement in favor of applying the mode-of-operation rule in the self-service cafeteria context specifically. *See Bozza v. Vornado, Inc.*, 200 A.2d 777 (N.J. 1964); *Ciminski v. Finn Corp.*, 537 P.2d 850 (Wash. Ct. App. 1975).

In more recent years, however, courts consistently declined to apply the mode-of-operation rule. *See, e.g.*, *Contreras*, 149 P.3d at 762, 764 (declining to apply the mode-of-operation rule when a plaintiff slipped and fell on a "slimy blue substance" at a Walgreens store; concluding that "[t]he fact that spills occurred twice a week in a store open twenty-four hours a day, without any other evidence about the location of the spills or the hazard they present to customers, is not sufficient for a reasonable jury to conclude that a hazardous condition resulting from those spills would regularly occur."). Arizona

District Courts, specifically, also consistently decline to apply the mode-of-operation rule. *See, e.g.*, *Moreno v. Target Corp.*, No. 2:12-CV-01357-JWS, 2013 WL 780989, at *1, *4 (D. Ariz. Mar. 1, 2013) (declining to apply the mode-of-operation rule and granting summary judgment when a Target store patron slipped and fell on a puddle of clear, unidentified liquid in the main aisle because "[t]here [was] no evidence in the record to demonstrate that spills occur[ed] with such frequency in the main aisle by the jewelry counter or any other part of the store that they could be considered customary or regular occurrences that Target should have reasonably anticipated;" adding that "[t]he possibility of another customer creating a hazardous condition in the store alone is not enough to overcome the notice requirement."); *see also Pulda v. Target Stores, Inc.*, No. CV 13-00399-PHX-DGC, 2014 WL 2510215, at *2 (D. Ariz. June 4, 2014) (granting summary judgment in favor of the defendant when a plaintiff brought a claim for slipping on an unidentified liquid in a Target store because the plaintiff did not "produce evidence that the liquid was on the floor long enough for Target and its employees, in the exercise of reasonable care, to find and remedy the hazard.").

The instant matter—in which Defendant operated a self-service cafeteria with a soft drink dispenser—presents a similar factional situation to those in which Arizona courts previously applied the mode-of-operation rule. *See generally Tom*, 633 P.2d 439; *Bloom*, 636 P.2d 1229. However, the lack of evidence regarding the frequency and location of spills in Defendant's cafeteria and the hazard that spills present to customers therein weighs against a finding that Defendant can reasonably anticipate that hazardous conditions will regularly arise. *See Contreras*, 149 P.3d at 762. Accordingly, whether the mode-of-operation rule applies presents a close call, but the outcome of this case is not dependent upon that distinction for the reasons outlined below.[3]

### 2. Breach of Duty

Assuming that the mode-of-operation rule applies, the Court must then decide whether Plaintiff provided sufficient evidence to meet her burden of proving that

---

[3] If the mode-of-operation rule does not apply, Plaintiff's inability to show that Defendant had actual or constructive notice defeats her claim.

- 8 -

Defendant acted unreasonably under the circumstances. *See Chiara*, 733 P.2d at 286. The fact that Plaintiff fails to provide any evidence regarding the origin of the allegedly hazardous condition, (*see generally* Doc. 69; PSOF), makes it difficult to establish that Defendant violated its duty of reasonable care. *See Chiara*, 733 P.2d at 285 ("A customer injured by a dangerous condition of unknown origin . . . would have difficulty establishing a breach of the proprietor's duty."). Plaintiff also provides no evidence regarding any prior spills in Defendant's cafeteria, including the frequency and location of any spills and the hazard they present to customers. (*See generally* Doc. 69; PSOF). In contrast, Defendant provided information regarding its policies and procedures, as well as expert testimony which corroborates its assertions that its policies meet the industry's standard of care. (Doc. 67 at 2–3).

Plaintiff claims that Defendant "fail[ed] to follow [its] own policies and procedures," but does not provide any evidence to substantiate the claim. (Doc. 69 at 5). Plaintiff instead argues that this lack of evidence is a basis upon which a jury could infer that Defendant acted unreasonably under the circumstances. *Id.* While "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor" when considering a motion for summary judgment, "the plaintiff *must present affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 255, 257 (emphasis added).

Here, as Defendant points out, Plaintiff presents no affirmative evidence in support of her argument. (Doc. 73 at 4). Defendant further provides that Plaintiff did not depose any witnesses, retain any experts, or conduct any written discovery regarding notice. (*Id.*). The Court finds that none of Plaintiff's claims are based on evidence, but instead are based on pure speculation. Plaintiff's claims therefore fall short of establishing a prima facie case because "Arizona law does not permit merely speculative claims to reach a jury." *Kinast v. Target Corp.*, No. CV-15-01063-PHX-DLR, 2016 WL 1593812, at *2 (D. Ariz. Apr. 21, 2016) (holding that summary judgment in favor of the defendant was proper when the plaintiff did not provide sufficient evidence regarding

actual or constructive notice, and instead argued only that the store's housekeeping practices were deficient).

Throughout her Response (Doc. 69) and Statement of Facts (PSOF), Plaintiff laments that she does not have adequate evidence because Defendant did not provide it to her. (Doc. 69; Doc. 70). Plaintiff, however, bears the burden of producing affirmative evidence that would support a jury verdict. *Liberty Lobby*, 477 U.S. at 256. "This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Id.* at 257. Under Arizona law:

> when discovery has been completed and the proponent of a claim or defense is unable to produce evidence sufficient to send the claim or defense to the jury, it would effectively abrogate the summary judgment rule to hold that the motion should be denied simply on the speculation that some slight doubt (and few cases have complete certainty), some scintilla of evidence, or some dispute over irrelevant or immaterial facts might blossom into a real controversy in the midst of trial.

*Orme Sch. v. Reeves*, 802 P.2d 1000, 1010 (1990).

Here, discovery closed on January 26, 2018, meaning that Plaintiff already had full opportunity to conduct discovery.[4] (Doc. 42). Accordingly, Plaintiff's argument that inferences should be credited in her favor without any evidence to support those inferences when she had full opportunity to procure such evidence if it exists is misplaced. *Feinman v. Target Corp.*, 11-62480-CIV, 2012 WL 6061745, at *6 (S.D. Fla. Dec. 6, 2012) (noting that a district court may not "impermissibly [pile] inferences upon inferences" in explaining that "the right to recover in a slip and fall case requires more than a showing simply that the surface upon which the injured fell was slick, smooth or wet." (citation omitted)). Plaintiff, having produced no affirmative evidence to support a jury verdict, fails to create a genuine dispute of material fact necessary to survive summary judgment, regardless of what Defendant did or did not disclose.

Given the lack of evidence, no reasonable jury could find that Plaintiff met her

---
[4] No discovery disputes were filed herein, and the time for such has long since passed. *See id.*

burden to prove a breach of reasonable care under the circumstances. Accordingly, summary judgment in favor of Defendant is proper in this case.

## IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 67) is **GRANTED**. The Clerk of the Court shall enter judgment accordingly.

Dated this 16th day of July, 2018.

James A. Teilborg
Senior United States District Judge